IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL STEPHEN WATTS : | |
| : | CIVIL ACTION |
| : | |
| Petitioner, : | |
| v. : | |
| : | NO. 13-7369 |
| MORGAN STANLEY SMITH BARNEY, : | |
| LLC, et al. : | |
| : | |
| Respondents. : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                               May 13, 2014

     Pending before the Court is Petitioner Carl Stephen Watts (Watts)'s Petition to Vacate Arbitration Award and Respondents Morgan Stanley Smith Barney, LLC, Steven Brettler, Richard Braitman, and James Nastasi (collectively "Respondents" or "MSSB")'s Cross-Petition to Confirm Arbitration Award.  For the following reasons, Watts's Petition to Vacate Arbitration Award is denied and Respondents' Cross-Petition to Confirm Arbitration Award is granted.

**I.     FACTUAL AND PROCEDURAL HISTORY**

     Petitioner Watts is an individual residing in Wayne, Pennsylvania.  (Pet. to Vacate ¶ 7.) Respondent Morgan Stanley Smith Barney, LLC is a Delaware limited liability company.  (Id. ¶ 8.)  Respondents Brettler, Braitman, and Nastasi are individuals residing in Pennsylvania, employed by MSSB as financial brokers.  (Id. ¶ 9.)  Petitioner brings this action under the Federal Arbitration Act, 9 U.S.C. § 1 et seq.  (Id. ¶ 10.)

     On or about March 18, 2011, MSSB submitted a Statement of Claim against Watts to binding arbitration before the Financial Industry Regulatory Authority ("FINRA").  (Pet. to Vacate, Ex. A, FINRA Award, 1.)  MSSB claimed that Watts had violated the terms of three

promissory notes and sought a total of $350,674.13 in compensatory damages plus interest, costs, and attorneys' fees.  (Id. at 2.)  Under FINRA's Rule 13408, each potential arbitrator is required to submit a "Disclosure Report" in which he or she must "make a reasonable effort to learn of, and must disclose . . . any circumstances which might preclude the arbitrator from rendering an objective and impartial determination[.]" (Resp. Opp'n Pet. to Vacate, Ex. 3, Arbitrator Disclosure Checklist.)[1]  These circumstances include, but are not limited to, "[a]ny direct or indirect financial or personal interest in the outcome[,]" "[a]ny existing or past financial, business, professional, family, social, or other relationships . . . with any party, party's representative, or anyone . . . who may be a witness[,]" and "[a]ny such relationship or circumstances involving members of the arbitrator's family[.]"  (Id.)

Some time after Watts filed his Answer on June 30, 2011, the parties selected a panel of three FINRA arbitrators to hear the case.  (Pet. to Vacate, Ex. B, FINRA Arbitration Panel Letter, 1–2.)  After the parties had an opportunity to review the Disclosure Reports of various potential arbitrators, the parties selected James W. Geiger, Jack H. McNairy, and Evelyn Boss Cogan. (Pet. to Vacate, Ex. B, FINRA Arbitration Panel Letter, 1–2.)  In a letter dated December 27, 2012, FINRA informed the parties that Evelyn Boss Cogan had "withdrawn from the arbitration panel" and would be replaced by John C. McGovern, Jr. ("McGovern").  (Id. at 1.)  FINRA also gave the parties an opportunity to review McGovern's "Disclosure Report."  (Id. at 4–6.)  Neither Watts nor MSSB objected to McGovern serving as an arbitrator in the case.  (FINRA Award, 1.)

On September 3–4, 2013, McGovern, along with the other two members of the FINRA

---

[1] MSSB has titled its Response "Opposition to Petition to Vacate Arbitration Award and Cross-Petition to Confirm Arbitration Award."  The Court will refer to this filing as the "Response in Opposition to the Petition to Vacate."

arbitration panel, heard the parties' case. (Id.) On September 17, 2013, the panel issued a six-page decision awarding MSSB $350,673.71 in compensatory damages, plus interest, costs, and attorneys' fees.

Sometime on or after September 17, 2013, Watts discovered that McGovern had served as the campaign treasurer for the 2010 election campaign of Sid Michaels Kavulich ("Kavulich"), then a candidate for the Pennsylvania House of Representatives. (Pet. to Vacate, Ex. C, Kavulich News Reports.) Currently, Kavulich represents the 114th District in the Pennsylvania House of Representatives. (Pet. to Vacate, Ex. D., Kavulich Page on MSSB Gov't Relations Website.) McGovern had not disclosed his position as Kavulich's campaign treasurer in his FINRA Disclosure Report. (FINRA Arbitration Panel Letter, Disclosure Report, 1–3.) MSSB maintains a page on its "Government Relations" website featuring a photograph of Representative Kavulich and listing his web address, e-mail address, mailing address, phone and fax numbers, party affiliation, and committee assignments. (Id.) MSSB maintains such a web page for many other members of the Pennsylvania House of Representatives and other state and federal legislators in an effort to provide its employees "easily accessible information [regarding] who [their] state and federal legislators are and ways to contact them." (Resp. Opp'n Pet. to Vacate, Ex. 1, MSSB Gov't Relations Website Homepage; Ex. 6, O'Brien Web Page on MSSB Gov't Relations Website.)

Watts initiated the present litigation when he filed the pending Petition to Vacate Arbitration Award on December 17, 2013. MSSB filed its Response in Opposition and Cross-Petition to Confirm Arbitration Award on January 27, 2014. Watts filed his Reply in Support of the Petition to Vacate and Response in Opposition to MSSB's Cross-Petition on February 12,

3

2014.  MSSB filed a Sur-Reply in Opposition to the Petition to Vacate and Reply in Support of the Cross-Petition on February 19, 2014.  The Petition and Cross-Petition are now ripe for review.

## II.    DISCUSSION

Watts asserts in his Petition that the FINRA panel's arbitration award to MSSB should be vacated because McGovern failed to disclose his position as treasurer for Representative Kavulich's 2010 campaign.  Such an omission, Watts argues, "created a readily presumptive conclusion that it was an intentional omission" and that "this relationship not only creates an 'appearance of bias' on behalf of the arbitrator, but also resulted in 'actual bias' that tainted the entire FINRA arbitration process." (Mem. Supp. Pet. to Vacate, 6.)  MSSB responds that Watts "cannot establish any evidence of partiality on the part of McGovern," that "McGovern had no duty to report his position as Kavulich's 2010 campaign treasurer," and that "McGovern's connection to Kavulich, a state representative with no cognizable relationship to MSSB, had no effect on his ability to reach a fair and just award[.]" (Resp. Opp'n Pet. to Vacate, 4.)

Under the Federal Arbitration Act, a court may vacate an arbitration award where there is "evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a)(2).  Petitions to vacate arbitration awards on grounds of "evident partiality" may be granted "when an arbitrator fails to disclose 'any dealings that might create an impression of possible bias.'" Crow Constr. Co. v. Jeffrey M. Brown Assoc., Inc., 264 F. Supp. 2d 217, 223–24 (E.D. Pa. 2003) (quoting Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 149 (1968).)[2]  "[T]o show

---

[2] "Petitioner alleges a failed disclosure on behalf of . . . [the] arbitrators involved. The Petitioner is challenging the arbitrator selection process as opposed to the arbitration process itself. . . . [T]he actual bias standard is inapplicable and . . . the Commonwealth Coatings

'evident partiality,' the challenging party must show 'a reasonable person would have to conclude that the arbitrator was partial' to the other party to the arbitration." <u>Kaplan v. First Options of Chi., Inc.</u> 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) (quoting <u>Apperson v. Fleet Carrier Corp.</u>, 879 F.2d 1344, 1358 (6th Cir. 1989)).

 To support his claim of "evident partiality," Watts points to the web page on MSSB's "Government Relations" website dedicated to listing Representative Kavulich's contact information. (Kavulich Page on MSSB Gov't Relations Website.) Watts contends that, in light of McGovern's failure to disclose his relationship with Representative Kavulich, this web page "create[s] an open question as to the neutrality and fairness of the arbitrator selection process" and that "[t]here is no telling as to who funded the campaign contributions for [R]epresentative Kavuluch in 2010 during his election campaign, and whether that could have been through MSSB directly, through anyone with direct ties to MSSB, if any, and the financial connections that may exist between MSSB, donors to the campaign of Sid Michaels Kavulich, and Arbitrator McGovern." (Mem. Supp. Pet. to Vacate, 22–23.) MSSB counters that "there is no factual basis to support the finding of any connection between" Representative Kavulich and MSSB, and that the web page "does not, in fact, connect [Representative] Kavulich and MSSB in any meaningful way." (Resp. Opp'n Pet. to Vacate, 11.)

 There is no "evident partiality" for McGovern's failure to disclose the fact that he was treasurer for Representative Kavulich's 2010 campaign because Watts has produced no evidence from which a "a reasonable person would have to conclude that the arbitrator was partial."

---

appearance of bias standard is the appropriate standard to apply here." <u>Crow Constr. Co.</u>, 264 F. Supp.2d at 223–24.

Kaplan, 19 F.3d at 1523 n.30 (quoting Apperson, 879 F.2d at 1358).  MSSB has shown that its web page detailing Representative Kavulich's contact information, party affiliation, and committee assignments is part of a larger effort to provide its employees "easily accessible information [about] state and federal legislators and ways to contact them," and not proof of any subterfuge on McGovern's part.  (MSSB Gov't Relations Website Home Page; O'Brien Page on MSSB Gov't Relations Website.)  Watts offers no other proof to support his assertion that there is "an open question as to the neutrality and fairness of the arbitrator selection process."  (Mem. Supp. Pet. to Vacate, 22.)  By itself, this informational web page about a state legislator cannot form the entire foundation of a finding that "a reasonable person would have to conclude that the arbitrator was partial."  Kaplan, 19 F.3d at 1523 n.30 (quoting Apperson, 879 F.2d at 1358).

Moreover, McGovern's failure to disclose his role as Representative Kavulich's campaign treasurer is an insufficient ground on which to vacate the arbitration award because McGovern's association with Representative Kavulich was a matter of public record.  In the recent Third Circuit case of Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240 (3d Cir. 2013), an arbitrator had failed to disclose the fact that one of the parties had donated to the arbitrator's election campaign for a seat on the Supreme Court of Pennsylvania.  Id. at 254–55.  The Third Circuit ruled that the arbitrator's failure to disclose the party's campaign contribution was an insufficient ground for vacating the arbitration award under the general rule that "undisclosed election support does not establish 'evident partiality,' nor does it create an appearance of bias."  Id. at 254 (internal citations omitted).  Among the reasons the Third Circuit articulated for its ruling was that "campaign funds are a matter of public record. . . . Because the information is public, there can be no allegation that [the arbitrator] intended to somehow hide

the fact that he had received contributions from [the party]." Id. at 255 (internal quotation omitted).

Here, there is evidence to show that McGovern's role in Representative Kavulich's campaign was even more public than the donations at issue in Freeman. As demonstrated by the news accounts of Representative Kavulich's 2010 campaign that Watts now attaches to his Petition as Exhibit C, McGovern's role as Representative Kavulich's campaign treasurer was a matter of public knowledge reported in at least two different, widely available publications. Watts states that had McGovern disclosed his prior position as Representative Kavulich's campaign treasurer, such disclosure "would have led to an investigation and exploration into Representative Kavulich's ties to the securities industry[.]" (Mem. Supp. Pet. to Vacate, 8.) Even so, the onus was on Watts to learn more about McGovern's quite public relationship with Representative Kavulich, not on McGovern to disclose it, since he could "have assumed that the parties already knew about" his official duties as part of a campaign for elected office. Freeman, 709 F.3d at 255.

Watts has not met his burden to produce evidence from which "a reasonable person would have to conclude that the arbitrator was partial" and, therefore, cannot show "evident partiality." Kaplan, 19 F.3d at 1523 n.30 (quoting Apperson, 879 F.2d at 1358). Accordingly the Court will deny Watts's Petition to Vacate Arbitration Award and grant MSSB's Cross-Petition to Confirm Arbitration Award.

**III.     CONCLUSION**

For all of the foregoing reasons, the Court will deny Petitioner Carl Stephen Watts's Petition to Vacate Arbitration Award and grant Respondents' Cross-Petition to Confirm Arbitration Award.

An appropriate order follows.